HEARD APRIL TERM, 1879.

CASE No. 759.

M. S. McINTYRE, EXECUTRIX, AND DUNCAN McINTYRE v. H. McCLENAGHAN, ADMINISTRATOR, ET AL.

1. An agent appointed by creditors, under the act regulating assignments for the benefit of creditors, is a trustee, and for assets of the assigned estate coming to his hands, however received, the statute of limitations does not commence to run in his favor until the trust is terminated.

2. An assignee under that act, by purchasing claims of creditors of the assigned estate, became entitled to the rights of such creditors against the agent.

3. A note of the agent, payable to such assignee January 1st, 1859, was barred by the statute of limitations before May 6th, 1871. *Per* TOWNSEND, Circuit judge, and WILLARD, C. J.

4. For the assets of the assigned estate in the hands of such agent, his executrix is liable to account; their disposition is not a matter affecting her interests.

5. Presentation of the claim against the assets of a law firm, of which the agent was a member, does not prevent the establishment of the claim against the individual estate of the agent.

HASKELL, A. J., dissented from the judgment of the court; the grounds of his dissent not stated.

Before TOWNSEND, J., at Marion, July, 1877.

This was an action instituted by M. S. McIntyre (formerly McClenaghan), the widow of John C. McClenaghan and executrix of his will, for a settlement of his estate. John C. McClenaghan, during his lifetime, was an attorney-at-law, and a member of the law firm of McClenaghan & Fairlee. Under the assignment of Dillon & Russ, Caldwell & Robinson were preferred creditors. The fifty-dollar note mentioned in the decree was made by J. C. McClenaghan on June 7th, 1858, payable on January 1st, 1859, to "E. T. Stackhouse, assignee of J. W. Dillon."

The other matters are fully stated in Judge Townsend's decree, which is as follows:

This is a proceeding to marshal the assets of the estate of

John C. McClenaghan, deceased. In compliance with an order of the court directing creditors to establish their claims, E. T. Stackhouse and Robinson & Caldwell appeared before W. W. Harllee, Esq., special referee, for this purpose.

The referee heard testimony relating to the claims, and has submitted a report, in which judgment against the creditors is recommended. To this report the creditors, Stackhouse and Caldwell & Robinson, file exceptions. These suggest the questions for the consideration of the court. It appears that the testator, McClenaghan, was an agent appointed by the creditors of Dillon and Dillon & Russ, who had made an assignment for the benefit of creditors.

E. T. Stackhouse and one McCormick were appointed assignees under the assignment. Certain funds came into the hands of McClenaghan, as the agent, and E. T. Stackhouse, as assignee and the owner of all the claims of the creditors of Dillon and Dillon & Russ, by purchase and compromise, except those of Robinson & Caldwell, presents this claim for the amount now claimed to be in the hands of the executrix. The plea of the statute of limitations was interposed as a bar to the recovery, and this has been sustained by the referee. It is contended by the creditors presenting the claims, that McClenaghan, as agent, was a trustee, and that his trusts were continuing, technical trusts, only cognizable in equity, and the statute is not applicable. This is the main question in the case.

Was McClenaghan, as agent, a trustee? He was appointed under the provisions of the act of 1828. The first section of the act provides that creditors may name and appoint an agent or agents to act in their behalf, jointly with the assignee or assignees appointed by the assignor. In the second section, the assignees are required to call the creditors together and have the agent or agents appointed by them, and in the meantime are inhibited from making any sales or transfers of the assigned property; and in case of their refusal or neglect to do so within the time prescribed, the agent or agents are authorized, under the order of the court, to take possession of and sell the assigned property. The third section gives equal power and authority to the agent or agents with the assignees, to sell and dispose of the

property assigned, and to distribute and pay the proceeds according to the intent and provisions of the deed of assignment. The remaining sections prescribe the duties of the assignees and agents. What is the purpose of the appointment of the agents under the act? This question is answered in the case of *Miller* v. *Sligh*, 10 *Rich. Eq.* 251, by the Chancellor delivering the opinion of the court.

There is no controversy as to whether an assignee is a trustee, and his trusts of such a continuing technical character as is alone cognizable in equity, and not subject to the operation of the statute of limitations. This fiduciary character is impressed upon him by the law in analogy to that relation created by the third section of the act of 1759, declaring that the persons to whom assignments are made by an insolvent debtor shall be trustees for all and singular the creditors. Cannot the same fiduciary relation be created by analogy in the case of the agents appointed by the creditors under the act of 1828? The act of 1759 relates to assignments made by insolvent debtors, while that of 1828 refers to those made by unfortunate debtors not in custody. These acts constitute parts of a system of legislation adopted for the relief of debtors. They should be construed *in pari materia*, as authorized by writers in laying down rules for construction, if the acts are to be considered together. Why, then, by the same analogy, should not the agents by law be held and declared to be trustees equally with the assignees?

In the case of *Miller* v. *Sligh*, before cited, the court says that the "general tenor of the statute is to create a joint authority of agents and assignees over the subjects of their *trusts*." The inference plainly deducible from the decision in this case is, that the agents were regarded as trustees as well as the assignees, and all would have been held liable alike, if joint dereliction of duty had been established. The act of 1828 provides that the agents shall have all the powers of the assignees in certain contingencies. If they are thus invested by law, they certainly partake of the fiduciary character of a trustee, because the assignee is declared to be such. The mere assumption of their powers cannot make them trustees; and it would seem that it was intended by the act that they should become trustees *eo instanti* on their appoint-

ment by the creditors. So that they would be trustees when authorized by the court to act as assignees.

The whole duty of the assignees is to collect the debts due, sell the assigned property, distribute and pay it out, make reports, and pay over any residue to the debtor. In all these acts the agents are required and permitted to participate. They are authorized to receive moneys, hold them as the custodians of the creditors, and to exercise equal power with the assignees. There is no reason, then, why the agents as well as the assignees should not be declared and held to be trustees. It frequently happens that the agents are the active managers of an assigned estate. To make them trustees for the creditors is equally as important and necessary as to constitute the assignees such. The purpose of the act in providing for the appointment of the agents was to give the creditors a voice in the management of the assigned property. The debtor appoints the assignees, and the creditors the agents, and they act jointly and have equal powers; and I can conceive of no valid reason why the one should be declared trustees and the other not.

But the referee bases his judgment on this question on the decision in the case of *Salas* v. *Cay, Mortimer & Co.*, 12 *Rich. L.* 558. The doctrine it announces is that "where there is an assignment for the benefit of creditors, the assignee should sue alone for the recovery of the assets; the agent should not be joined with him in the action." The reason of this rule is briefly stated in the case to be that "the assignment conveys the assignor's interest to the assignee. The appointment of the agent is subsequent; he is merely appointed as a sort of custodian for the creditors." But notwithstanding the legal title to the property is in the assignees, yet the statute confers a power upon the agents, and is full of provisions directing them to act jointly with the assignees in selling the property and distributing the proceeds; and actually provides, in certain contingencies, that the agents shall act as assignees, and translates title to them. Everything else can be done by the agents, except to bring action; and the subsequent appointment of them necessarily is the reason of this. I do not regard the want of power in the agents to join with the assignees in bringing actions as conclu-

sive of the question whether they are trustees or not. The referee says the right to receive on the part of the agent depends upon the right to sue. The statute confers the right to receive after the action is brought by the assignees. Without this authority, the position of the referee might be maintainable

The referee further says that it is as to the sale and disposition of the property assigned that the agents are empowered to act with the assignees. In the case of *Miller* v. *Sligh,* the court says the statute empowers the agents not only to sell the property, but to act jointly with the assignees. in distributing its proceeds. It would seem also that they could act jointly in distributing the proceeds arising from an action brought by the assignees. It is further ruled by the referee that the assignees and agents are required to make deposits in a certain bank. The statute directs that it can only be drawn out by them jointly; thus giving to the agents authority equal with that of the assignees over all funds collected, no matter from what source or in what way. It is also stated by the referee that the choses in action belonging to the assigned estate were lodged with McClenaghan as attorney, except those turned over by the retiring assignee, McCormick. It appears that such was the case; but after suits brought and judgments obtained, he realized the money and took possession of it as agent, as indicated by his report made to the creditors in 1860. He exercised the power here of collecting moneys in judgments obtained in the name of the assignee; and these are now the subject of controversy. The referee holds, under all the circumstances, that the testator does not occupy the position of one in whom was vested a technical continual trust, only enjoyable in equity, and that Stackhouse had the right, at any time, to bring action against him; especially after 1862, when all the rights of the creditors of the assigned estate vested in him by virtue of assignments made. There is a controversy as to whether Stackhouse is the assignee of all the claims. It appears that he is not of those of Robinson & Caldwell. The referee, however, concludes that these claims are paid by operation of law, or in some way, by reason of their being preferred, and money sufficient for their payment being in the hands of the assignee. Suppose Stackhouse were the assignee

of all the claims of creditors, he stands in their shoes, and sustains the double character of assignee under the deed and creditor. As the trustee, he has the right to recover from the agent, if there are funds of the assigned estate in his hands. This is the character in which he presents his claim.

I feel constrained, though with hesitation, to differ in judgment with the referee, and conclude, as matter of law, that J. C. McClenaghan, the testator, was a trustee, and that his trusts were technical continuing trusts, such as are cognizable only in equity, and not barred in four years by the statute of limitations. If it was a technical trust as to the claims between these parties and McClenaghan, it was not within the statute of limitations. But "if the trustee does an act which imports to be a termination of the trust; if he has a settlement which is intended to be in full; if he settles as to part, and claims the residue in his own right; if he denies the trust in the presence of the *cestui que trust*, these acts, or any of them, will so far disturb and dissolve the strictly fiduciary relation between the trustee and the *cestui que trust*, as that the statute of limitations will commence to run from the date of such acts. This doctrine is fully supported by authority." *Long* v. *Cason*, 4 *Rich. Eq.* 63, *Colburn* v. *Holland*, 14 *Rich. Eq.* 213.

Was any act done by McClenaghan in his lifetime which imported to be a termination of the trust? The testimony does not disclose any such. He had no settlement which was declared or intended to be in full. He never openly denied his trust character or openly asserted an adverse holding. In 1860, when he made his report, acknowledging the possession of trust funds, he admitted the rights of the *cestuis que trust*. From the testimony, I can discover no act or declaration on his part, while living, that indicated a purpose, on his part, to discharge or throw off his trust, so as to free him from accountability under it for the money in his hands. So long as he lived, the relation of trustee and *cestui que trust* existed, and the trust was not within the statute of limitations.

Was the trust executed at any time during the life of the trustee? In 1860 the assignee and agents were required by the creditors to submit a report showing the funds in hand belonging

to the assigned estate. A distribution of them among the creditors was contemplated. This was prevented by a threatened suit from some of the creditors who had not accepted under the assignment. This state of things caused the creditors to direct the assignee and agents to loan out the funds pending the litigation. No settlement was then made, and none ever has been since. The creditors are still unpaid, and there has been no final accounting under the deed of assignment. The trust was not executed by the agent in turning over the fund to the assignee, or by its payment to creditors entitled to receive it. The trusts under the deed are not yet executed. So that, in this view of the case, the statute has not yet had any currency as against the assignee or the agents. But the referee says that E. T. Stackhouse purchased all the claims against the assigned estate, and from that period, which is fixed as 1862, the statute commenced to run, because Stackhouse had the right to maintain action against the agent. As a fact, Stackhouse did not buy all the claims. Those of Caldwell & Robinson were not assigned to him. Let it be assumed that he did. Thus he became the creditor or assignee of all these claims, and was substituted in the stead of the original *cestui que trust,* and enjoyed all the rights they did as against the agents. He sustained the double character of assignee and *cestui que trust* so far as the agents were concerned. If the original *cestui que trust* could not be barred by the statute of limitations, clearly Stackhouse, standing in their shoes, could not be, after his purchase in 1862. These purchases by Stackhouse did not end the trusts. The agent did not turn over the funds in his hands so as to end his trust. He still held them, and so far as Stackhouse and the other creditors were concerned, he continued to occupy the position of a trustee. The death of McClenaghan, in 1863, could not terminate the trust. The fund in his hands passed into the possession of his executrix, who was his sole legatee and devisee likewise.

From books and papers of her testator, she must have been cognizant of the existence of the trust. In 1869 she had express notice of it when the claim for the fund was formally preferred. The will provides for the payment of all the debts of the testator, and this claim for trust funds was to be also discharged. The

trust then continued to exist after his death, and his executrix was accountable for the funds equally with the testator as trustee. 9 *Rich. Eq.* 85.

As the testator, J. C. McClenaghan, by virtue of his agency under the deed of assignment, was a trustee, and his technical trusts have never been ended by any act of his, by an execution of them, or in any other way, I conclude that the claims of E. T. Stackhouse, as creditor, have not been barred by the statute of limitations. Nor have the claims of Robinson & Caldwell. I concur in judgment with the referee, that the note of fifty dol-, lars is nothing more than a simple money demand; but is it barred by the statute?

But let it be assumed that McClenaghan was not a trustee, whose trust was technical and continuing as agent for the creditors, are not these creditors still entitled to a recovery of their claims? He held the funds as agent, as evidenced by his own admission. The claims were collected, the proceeds reported or had by him as agent, and the relation of attorney and client after this act no longer existed. If he held the funds as agent for the creditors, there was an implied trust created by operation of law, and the statute would not begin to run until after demand. This doctrine is announced in the case of *Lever* v. *Lever*, 1 *Hill Ch.* 67. In such cases there is no live act until a failure to pay on demand, and hence until then the statute has no currency. In the case of *Salus* v. *Cay, Mortimer & Co.*, the court held that the agents are the custodians for the creditors. If so, McClenaghan was a bailee holding funds for others, and until demand made no cause of action occurred and the statute did not run. There was no demand made upon him in his lifetime. But the referee holds that the rule depends upon the continuance of the relation, and necessarily ceases when such relation is dissolved; the relation of principal and agent and attorney and client is dissolved by the death of one of the parties, because the confidence reposed is personal and the substratum of the relation is gone. The rule might be different as to the bailor and bailee, under some circumstances. Where the relation of principal and agent is dissolved by the death of either party, the trust may continue and be capable of execution by the representatives of the deceased

party. Authority may be confirmed by will or otherwise for this purpose. The executrix of McClenaghan is directed by the will to pay all his debts. This fund went into her possession with other property with her knowledge. With the authority conferred under the will she continued to hold it as trust funds, and to act in the stead of the testator in the further execution of the trust. It ·would seem, then, that demand upon her was necessary to give currency to the statute of limitations. None was ever made upon her until 1863. From that period the four years necessary have not elapsed so as to furnish a bàr to the recovery of the funds. But suppose the relation, whatever it was, subsisting between McClenaghan and the creditors, was dissolved by his death, · even then the statutory period has not elapsed. The agent died in 1863. At that time the statute of limitations in this state was suspended, and continued to be until December 21st, 1866. The complaint in this case was filed on May 6th, 1871. The executrix was protected from suit for nine months after December 21st, 1866. From the period at which the statute commenced to run in 1867 to the time of filing the complaint, was not four years, and therefore the creditors are not barred by the statute of limitations. The referee says the stay law has been declared unconstitutional as to debts existing antecedently to its enactment, and there was no suspension of the statute as to the claims of these creditors. It might be a question whether the debt in this case did not arise, or at least the cause of action accrue, after the first act in 1861. But the discussion of this question is unnecessary. In this state the suspension of the statute is not considered an impairment of a contract. And in regard to these claims it can be held that the statute was suspended.

Objection was urged against the form in which the claims of Stackhouse were presented. Two accounts have been filed—one against McClenaghan & Fairlee ; and the other against J. C. McClenaghan as agent. These are not proof of the facts of the case. It appears that McClenaghan, by his own admission, held the funds as agent, either as an express trustee or implied as bailor, and not as an attorney. These claims, therefore, are presented against him as agent, and it is for the court to determine

N

in any view of the case, whether his estate is now liable for the funds received by him. If the estate is liable to account for the funds so received by him, there can be no doubt of the right of E. T. Stackhouse to recover. He occupies the position of a creditor by reason of the assignments made to him. As he compromised the claims, he is entitled to be reimbursed out of the funds to the extent of what he actually paid and interest. *Farrar* v. *Farley*, 3 *S. C.* 11. If he recovers more money from the estate than he is entitled to receive, his trusts have not yet been executed, and he can be called to an account under the deed of assignment by any other creditors or the debtor. His trust still continues. He is now the proper custodian of this fund, if it is recoverable from the estate of McClenaghan. The executrix has no right to hold it, or to question the right of Stackhouse, as assignee and creditor to receive it.

The claims of Robinson & Caldwell have not been extinguished in the way indicated by the referee in his report. They are entitled to recover out of the estate of J. C. McClenaghan the amount of principal and interest due them. E. T. Stackhouse will be entitled to judgment for the balance found to be in the hands of the executrix or of the court, after the payment of the claims of Robinson & Caldwell, exclusive of the $50 note, which is not barred by the statute of limitations.

The view the court takes of the character that McClenaghan and his executrix sustained as express trustees, justifies the conclusion that interest on the fund is recoverable. As there seems to be some doubt about the true amount of trust funds held by John C. McClenaghan, it is deemed advisable to refer this question again to the referee to ascertain what it is, including interest. When this is done and commissions are allowed, the claims of Robinson & Caldwell will first be deducted from this amount, and E. T. Stackhouse will be entitled to a judgment for the residue.

*It is adjudged and ordered,* That the exceptions to the referee's report, in so far as they have been considered in this decree, be sustained, and that E. T. Stackhouse and Robinson & Caldwell are entitled to judgment against the executrix of J. C. McClena-

ghan, deceased, for the amounts respectively, to be ascertained in the manner herein indicated.

*It is further ordered,* That the special referee do hear further testimony with a view of ascertaining the true amount of the trust fund, including interest now in the possession and custody of the executrix of John C. McClenaghan, deceased; and that he allow judgments in favor of E. T. Stackhouse and Robinson & Caldwell against her for the amounts to which they are respectively entitled, according to the directions heretofore given.

*It is further adjudged and ordered,* That the plea of the statute of limitations, as to the $50 note held by E. T. Stackhouse, be sustained.

The plaintiffs appealed upon the following grounds, assigned as errors:

1. In that the judge held that John C. McClenaghan, as agent of the creditors of J. W. Dillon and of Dillon & Russ, was a trustee, and that his trusts were technical continuing trusts, such as were only cognizable in a Court of Equity and not subject to the bar of the statute of limitations.

2. In that the judge held that E. T. Stackhouse, one of the assignees of J. W. Dillon and of Dillon & Russ, by the purchase of the claims of creditors of said assignor, "stood in the shoes of the creditors," and was protected from the operation of the statute of limitations to the same extent they would be had they not sold their claims.

3. In that the judge held that the claims of Caldwell & Robinson were subsisting claims, though the evidence showed that E. T. Stackhouse, in April, 1860, had in hand an amount of money, which was, by the terms of assignment, applicable to their payment, and which was more than sufficient for that purpose, and though Caldwell & Robinson did not prove their claims before the referee.

4. In that the judge held that the claims of Caldwell & Robinson were still subsisting claims, when the evidence showed that one of them had been paid by the notes of J. W. and E. R. Bethea, and the balance of the same had been paid by J. W. Dillon on the          day of          , A. D. 1868; and that the other claim had been partly paid by E. T. Stackhouse, and that

he had relieved D. W. Bethea, one of the joint makers, from all liability for the balance due on same.

5. In that the judge held that there was any amount due by J. C. McClenaghan, or his estate, to the assigned estate of J. W. Dillon and of Dillon & Russ, there having been no settlement or accounting between the assignee and the agents of creditors, as it is submitted should have been done, before the claims could be properly proved in this cause.

6. In that the judge held that the claims now set up by E. T. Stackhouse, against the estate of John C. McClenaghan, for money received by him as agent of creditors, could be sustained, though in November, 1871, he proved the same claims against McClenaghan & Fairlee, as attorneys-at-law.

7. In that the judge held that the estate of J. C. McClenaghan is liable for interest before demand made for payment of principal.

8. In that the judge held that the death of J. C. McClenaghan, in March, 1863, did not give currency to the statute of limitations, supposing him to have been either a trustee and not entitled to its protection, or an agent and not entitled to its protection till after demand made.

9. In that the court held that if the statute of limitations ran, that E. T. Stackhouse, assignee, and the creditors, had four years and nine months after the 21st of December, 1866, within which to bring their suits.

10. In that the judge reversed the report of the special referee, which, it is respectfully submitted, was error.

*Messrs. Johnson & Johnson,* attorneys for appellant.

*Mr. J. G. Blue,* attorney for respondent.

September 24th, 1879.  The opinion of the court was delivered by

Willard, C. J.   The principal question is whether the demands against the estate of McClenaghan, made by E. T. Stackhouse, are barred by the statute of limitations.

The facts out of which the question arises are that Stackhouse and McCormick were the assignees of Dillon, an insolvent

debtor, and McClenaghan and Sellers were appointed agents under the act regulating assignments of debtors (6 *Stat.* 365), and a committee in behalf of creditors was also appointed. McClenaghan was an attorney-at-law, and certain choses in action were placed in his hands for collection by the assignees, which do not appear to have been accounted for. The demands of all the creditors interested under the assignment, except those of Caldwell and Robinson, who were preferred, have been purchased, and are now held by Stackhouse. McClenaghan is dead, and his executrix is now called upon to account for so much of the assigned estate as came into the hands of her testator, as already stated. The statute of limitations is interposed as a defence to this demand.

It is contended, on the one hand, that McClenaghan was a trustee of an express trust, as it regarded all the assets of the assigned estate that came into his hands while acting as agent for the creditors, and that his executrix being charged with the execution of such trust to the extent of accounting for all such assets, she cannot take advantage of the bar of the statute; on the other hand, it is contended that the only demand against the estate of McClenaghan, existing under the circumstances already briefly stated, arises upon a simple contract obligation incident to the relation of attorney and client, existing between the assignees and McClenaghan as it regards the choses in action placed in his hands for collection, and, as such, is barred by lapse of four years after maturity.

It cannot be doubted that McClenaghan, as agent, was a trustee of a *power* under the deed of assignment to be exercised for the benefit of creditors. The statute must be regarded as a part of the assignment made under it, and all the powers and responsibilities conferred and imposed by the statute upon the agents appointed by creditors have the same efficacy as if expressly created by the deed of assignment. Assuming the view taken in *Salas* v. *Cay*, 12 *Rich.* 559, and *Miller* v. *Sligh*, 10 *Rich. Eq.* 247, to be conclusive, and it is clear that McClenaghan, by accepting the appointment of agent, became bound to an active participation in the disposition of the assigned estate. He was bound to inform himself of the condition of the assets and of the

indebtedness of the estate, and to protect and apply the assets. If it be conceded that the legal title to the assigned estate remained exclusively in the assignees, yet it is clear that the legal powers of the agents and the assignees are equal as it regarded the control of the assigned estate. This ample power of control over this disposition of the estate was placed in the hands of McClenaghan as a trust for the benefit of creditors, and equity regards the depositaries of such powers, whether coupled with the legal title or without it, as chargeable with responsibilities of the same nature, and of a strictly fiduciary character.

It remains, then, to consider, in the next place, what position an agent, under the act, occupies as it regards creditors, where, for any reasons, assets of the assigned estate, subject to distribution, come into his hands.

There can be no doubt that in such a case the agent is chargeable, in equity, as a trustee, with liability to account for such assets. If, as must be concluded, he is liable to account in the character of a trustee for the mode in which his powers as agent are exercised, it would follow that such an accounting would draw after it responsibility in the character of trustee for the assets in his hands. It matters not, under this view, from what source or by what authority the agent came into possession, for the nature of his powers and responsibilities are such that he could not acquire possession of such property by any means that would give less or different responsibilities than those imposed by the nature of his office. It is, therefore, unimportant to notice the circumstances under which McClenaghan became possessed of such estate, or by whom or for what immediate purpose they were placed in his hands, so far as it concerns the nature of his liability to creditors.

From the foregoing it must be concluded that McClenaghan was liable to the creditors, under the deed of assignment, to account, in equity, for the choses and their product in his hands at the time the demands of all those creditors, except Caldwell and Robinson, were assigned to Stackhouse. The right of Stackhouse to stand in the place of creditors, whose claims he purchased, is not questioned by any party entitled to question it, and must be deemed perfect.

The representative of McClenaghan has no interest to contest it. Such being the case, no reason exists why Stackhouse should not have acquired all the right, legal and equitable, of his assignors, and, among others, the right to pursue the assets in the hands of McClenaghan as a trust. The fact that, as assignee, he had a more restricted right of procedure against McClenaghan, did not prevent his acquiring a more full remedy by succeeding to the rights of the creditors. Nor did the fact that Stackhouse united in himself the characters of assignee and of *cestui que trust*, having a beneficial interest as to part of the entire beneficial interest, have the effect to terminate the trust.

The claims of Caldwell and Robinson were entitled to participate in the execution of the trust, and the trust could not be considered as fully executed until those claims had been satisfied.

It must, therefore, be concluded that the trust is subsisting, and that Stackhouse, through it, is entitled to pursue the assets in question. This disposes of the question of the statute of limitations as affecting the claims for the assets that came into the hands of McClenaghan while acting as agent, and not fully accounted for. The conclusion of the Circuit Court, sustaining the statute of limitations as against the note of E. T. Stackhouse, falling due January 1st, 1859, is free from error.

The third and fourth grounds of exception to the decree are immaterial. The question of the liability of the estate of McClenaghan is the only one in which the plaintiffs are concerned. As to the disposition of those assets, under the assignment, the executrix of McClenaghan has no concern. The powers of the agency of McClenaghan ceased at his death, and the executrix has no further duty than to account for what was due from McClenaghan.

The fifth ground of exception is disposed of by what has already been said. Nor is the fact alleged in the sixth exception at all material. Had it appeared that the amount now claimed had been satisfied out of the estate of McClenaghan & Fairlee, that fact might be available, but it does not appear in the case.

It does not appear that the interest account of McClenaghan has yet been stated, nor, indeed, that the accounting is complete

as to the principal sum due, for a further hearing is ordered by the decree upon additional testimony.

As the decree does not fix the principles upon which the computation of interest should be made, it must be premature to consider that question at the present time.

The decree should be affirmed and the appeal dismissed.

>                              Appeal dismissed.

McIVER, A. J., concurred; HASKELL, A. J., dissented.